## Smith v. Fidelity & Columbia Trust Company.

(Decided December 21, 1928.)

DAVID R. CASTLEMAN for appellant.

TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This is a customer's action to recover damages from his real estate broker for alleged negligence in conducting negotiations and concluding a sale. Milton Smith,

Jr., was the owner of a handsome home located in the city of Louisville. He employed the Fidelity & Columbia Trust Company to negotiate a sale of it, and agreed to pay the customary commission for the service. The price suggested by Smith to be asked for the property was $30,000. Efforts to effect a sale at that price were unsuccessful, although extended over a period of several months. The property had been viewed by numerous prospective purchasers, but no one had submitted an offer. Finally, on July 6, 1925, P. C. Doerhoefer made a written offer of $22,500 for the place, but that offer was not accepted. Two days later Gilmore Ouerbacker submitted a bid of $25,000. When Doerhoefer was advised of the bid of Ouerbacker, he increased his own offer to $26,000. Ouerbacker was informed of the fact, and advised the broker that he would not bid against anybody for a piece of property, but would consider a counter offer from the owner. A consultation was held by Smith and his broker, the situation was carefully considered, and it was agreed that a counter proposition of $27,000 for the property should be submited to Ouerbacker. Yet Smith did not act solely upon the advice of the broker. He took the suggestion under advisement, and declined to decide definitely his course of action until he had discussed the matter with his wife. He did decide, however, after seeing Mrs. Smith, to make the counter offer, and it resulted in an immediate sale. Smith concluded the transaction with Ouerbacker, and paid the agreed commission to his broker.

The present action by Smith was filed a month later, seeking to recover damages in the sum of $2,500. The cause of action stated in the petition was rested upon a charge of negligence on the part of the defendant in advising a sale of the property at the price of $27,500, without giving Doerhoefer the opportunity to bid a higher price, when he was ready, able, and willing to pay $30,000 for the property. The answer of defendant denied the allegations of negligence, and in a second paragraph set forth affirmatively its version of the transaction. A reply completed the isues, and a jury trial resulted in a verdict for the defendant. Plaintiff demanded, but was denied, a new trial, and has prosecuted the present appeal.

The appellant complains that error to his prejudice was committed by the trial court in the admission and ex-

clusion of evidence, and in giving and refusing instructions to the jury.

The action sounds in tort, and is predicated upon a charge of negligence by the broker in the discharge of its duties in negotiating and advising a sale of the property at $27,500. The particular breach of duty alleged in the petition is the failure of the broker to give Doerhoefer an opportunity to bid $30,000 for the property, when he was ready, able, and willing to do so. It is the duty of a broker to exert his best efforts and to exercise his best judgment for the benefit of his principal. Like any other agent for pay, it is the broker's duty to advise his principal fully of all the facts within his knowledge affecting the matter in hand reasonably calculated to influence his judgment, and to make an honest and diligent effort to accomplish the purpose of the agency. The broker is likewise under a duty to possess and employ that degree of skill in the business that is usually possessed and exercised by persons professing that particular calling. 9 C. J. p. 535; 2 C. J. pp. 692, 714, and 720; 4 R. C. L. p. 269, sec. 19; Shatz Realty Co. v. King, 225 Ky. 846, 10 S. W. (2d) 456; Carter v. Owens, 58 Fla. 204, 50 So. 641, 25 L. R. A. (N. S.) 736; Milliken v. Woodward, 64 N. J. Law, 444, 45 A. 796. Cf. Siegel v. Rosenzweig, 129 App. Div. 547, 114 N. Y. S. 179.

It is not claimed here, as it could not be under the evidence, that the broker withheld from his principal any facts, or failed to make an honest and diligent effort to serve the interests of his customer. The claim is that the broker made a mistake of judgment in advising a sale, when a proper prescience and skill on its part would have prompted a further effort to make a deal with Doerhoefer. Looking back at events, and with a knowledge of mental attitudes not previously possessed, it is argued with great earnestness that proper and reasonable skill on the part of defendant might have led to a different result. We are not impressed that a sale could have been made to Doerhoefer in any event. His testimony now that he was willing to give $30,000 for the property, if necessary to go that high to get it, must be weighed in the light of his conduct before the sale was made. He was not denied an opportunity to bid on the property. He was solicited by the broker to make an offer, and was prodded up to the offer of $26,000 which he did make. He knew that another prospective purchaser was interested,

and yet he concealed, as he admits, his secret willingness to go higher. There is convincing proof that he stated to the broker that his offer of $26,000 was his limit; but as he now denies it, we must accept his own claim that he was willing to pay more, but did not let the broker know it. His attitude, as admitted by him, is consistent with the testimony of Stites and Jones that he said $26,000 was as far as he would go. He admits that he would not pay $30,000 for the place after Ouerbacker had acquired it. He did not ask for a counter offer from the owner, and it was reasonable and natural for the broker to conclude that he had gone his limit when he offered $26,000. Certainly no broker could be convicted of negligence in failing to divine a desire to buy property at a price beyond that plainly proposed and solemnly submitted. A broker is not liable for a mere mistake of judgment that did not result from a failure to know or do that which a person of ordinary prudence under similar circumstances would know or do. The standard of straightforwardness prevailing in business transactions certainly does not require a negotiator to suspect or assume that the other party is deliberately contriving to deceive. Every agent has the right to act upon the assumption that a prospective buyer or seller is both truthful and candid, unless he has notice or knowledge to the contrary. The broker in the present case had reached a stalemate in playing one bidder for the place against the other, and Ouerbacker had flatly refused further to be a party to that game. He called for a counter offer from the owner as a condition of further negotiation by him. The broker could not go back to Doerhoefer, as he had no new bid from a competitor, and the only man who had requested a counter offer was the proper one to receive it. There was no evidence whatever of any breach of duty on the part of the broker in deciding on the facts then known to it to advise and conclude a sale without further interviews with Doerhoefer. But it is stoutly insisted that the broker was negligent in advising the plaintiff to make a counter offer for less than $30,000 under the circumstances then existing. It is thought that the requisite skill and experience should have taught the broker to hold out longer for the ultimate price desired by the customer. The fact is that the skill and experience of the broker dictated that the time for action had arrived, and it was convinced that the crucial hour had

struck. We are not persuaded that any mistake of judgment was made. The facts then known to the broker were equally known to Smith. The decision to be made was an important one, and the wisdom of it depended upon factors to determine which the customer was as competent as the broker. It was a matter of judgment on general business conditions and values, in a particular exigency, unaffected by any peculiar knowledge possessed by either. Smith halted to gain his wife's concurrence, and all parties interested were convinced at the time. It is suggested that a higher degree of skill in salesmanship should be attributed to the broker, and, although the plaintiff did not know that a counter offer was then inadvisable, the broker should have known it. If the presumption be indulged, the fact remains that a liability in damages for a mistake of judgment cannot be hinged on circumstances so conjectural and speculative. We cannot say even now that the advice given was unsound, and certainly the facts then known justified the judgment which actuated the parties. If liability could be founded upon a basis so flimsy, no agent could afford to advise the conclusion of negotiations. Such potential responsibility would destroy an agent's freedom of action, and deprive people of all assistance and advice in important transactions. Men dealing at arm's length must, at some stage, come to a decision. If the liability of an agent could be based on a mere statement of one of the participants in a transaction, made after the event, that when action was advised and taken he had not yet reached his limit, the business of representing others would be too perilous to pursue. So long as the agent acts honestly, in good faith, according to his best skill and judgment, and without negligence in ascertaining and reporting actual facts and conditions available to him at the time, he may not be held liable for an alleged mistake of judgment merely because some one is willing afterwards to swear that a prolongation of the chaffering would have achieved greater results. The law imposes no such responsibility upon an agent. We regard it as clear beyond doubt, on the facts appearing, that the broker was not guilty of any negligence in advising the counter offer and sale to Ouerbacker. Giving to the evidence the view most favorable to plaintiff, the facts shown, and the inferences fairly flowing therefrom, failed to make out a case for

the jury, and a peremptory instruction for the defendant should have been given.

In view of the conclusions we have reached, it is unnecessary to consider the complaints respecting the rulings of the court regulating the introduction of evidence, as the result, in any event, would be the same. Like reasoning relieves us of the necessity of considering the instructions given and refused. If the instructions were not right, which we need not now determine, no harm happened to appellant who had no cause of action or right, in any event, to go to the jury.

The judgment is affirmed.