440 P.2d 521

K. E. GIESE and Louise Giese, husband and
wife, Plaintiffs-Respondents,

v.

Clements H. TARP and Rosa Tarp, jointly
and severally, Defendants-Appellants.

No. 9820.

Supreme Court of Idaho.

May 13, 1968.

Gigray, Boyd & Downen, Caldwell, for
appellants.

Bruce O. Robinson, Nampa, for respondents.

McQUADE, Justice.

This action arose out of an exchange of
real properties. Respondent K. E. Giese is
a licensed Nampa real estate broker. He
and his wife sued appellants Clements H.
Tarp and Rosa Tarp (son and mother),
jointly and severally, to recover the balance
owed on a promissory note made to Gieses
by Tarps as commission paid with respect to
an exchange of properties between Tarps
and Leon and Gay McKay.

Appellants admitted making the note but
contended K. E. Giese had so negligently
conducted the exchange transaction that
there had been no consideration for the
note. They also counterclaimed for damages allegedly resulting from Giese's negli-

**244**

gence.[1] The central point of appellants' argument concerned the amount of indebtedness encumbering some real property owned by McKay which appellants received as encumbered in the exchange transaction. Appellants claim K. E. Giese led them to believe they were assuming a $13,000.00 indebtedness when in fact the debt was $15,000.00.

The district court entered judgment for respondents on the promissory note and against appellants on their counterclaim. Finding no error in that judgment we affirm.

 The parties are not in conflict concerning the pertinent principles of law: a real estate broker is an agent standing in fiduciary relation to his principal;[2] and the broker is obligated to exercise on behalf of his principal reasonable care and skill or such care and skill as is ordinarily possessed and exercised by real estate brokers.[3] The issue presented for determination on this appeal is a question of fact, whether the record adequately supports the district court's findings that respondent K. E. Giese had not been negligent in his conduct of the exchange transaction. The rule of law governing determination of this issue is also undisputed: this Court will not disturb findings of fact based on substantial though conflicting evidence.[4]

The following facts appear from the record. The promissory note sued upon was a renewal note executed February 17, 1964, in the amount of $1,071.50. The original note apparently had been executed December 15, 1962, and no payments had been made on it. The renewal note matured April 17, 1964, and on that day Tarps paid $239.28 on it, leaving a balance due of $832.-22. The note provided for six per cent interest and attorney's fees in the event of an action for collection. Respondents had made a guaranteed endorsement of the original note and sold it to the Idaho First National Bank. After appellants refused to honor the note the bank reassigned it to respondents.

Before the property exchange, appellant Rosa Tarp owned a farm in Canyon County and her son, appellant Clements H. Tarp, worked the farm and he took the profits from it. Sometime in 1961 the farm was listed for sale with respondent K. E. Giese for $110,000.00.

In the summer of 1962, Leon McKay wanted to move from his farm in Ada County to a larger place. At about that time, Giese brought Clements Tarp out to see McKay's farm. Soon thereafter, Giese went out by himself to McKay's farm and discussed possible terms of trade between Tarps and McKays for the two farms. McKay testified it was his understanding from the beginning that no cash was to change hands: "It was all equity, transferring of the equities." Giese made several trips back and forth between the parties to the exchange. There was an offer from Tarps which McKay rejected, sending back a counter offer.

October 27, 1962, McKays and Tarps executed articles of agreement for the exchange of their farms. As executed, this document contains several inked-in changes all of which were initialed by Tarps. The proper interpretation of these alterations presents the central difficulty of the present controversy.

The articles of agreement provide that McKays will purchase Tarps' farm by trans-

---

1. Appellants also claimed punitive damages alleging Giese's misconduct had been willful and claimed damages of $71.00 for Giese's alleged negligence concerning proration of taxes and assessments. On motion, the court dismissed these claims for failure of proof and there has been no appeal from that order.

2. See Rogers v. Hendrix, 92 Idaho 141, 438 P.2d 653, (March 20, 1968).

3. See Frye v. Levanger, 76 Idaho 252, 281 P.2d 134 (1955); Annot., Liability of Real Estate Broker to Principal for Negligence in Carrying Out Agency, 94 A.L. R.2d 468 (1964).

4. E. g., Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); King v. MacDonald, 90 Idaho 272, 410 P.2d 969 (1966). Cf. Rogers v. Hendrix, supra n. 2.

ferring to Tarps McKays' equity in McKays' own farm and by McKays assuming and agreeing to pay the balances of Tarps' encumbrances on Tarps' farm, consisting of one escrow contract and one promissory note. The stated value of Tarps' farm for purposes of the exchange was $91,880.76. Originally, before alteration by the inked-in changes, the articles of agreement stated the total value of McKays' farm as $42,500.00, of which $27,500.00 was attributed expressly to McKays' equity and $15,000.00 was stated as the balance of a certain escrow contract encumbering the farm; and besides transferring their equity McKays were to furnish (by assuming and agreeing to pay certain debts) "the balance of the [$91,-880.76 total] purchase price," such "balance" being recited as $64,380.76. The initialed inked-in changes were: McKays' equity in their farm became $29,500.00; the "balance of the purchase price" became $62,380.76. The stated amount of the certain escrow contract encumbering McKays' farm stayed $15,000.00. Nevertheless, the recited total value of McKays' farm was not altered; it remained $42,500.00. Thus, the values (total, equity and encumbrance) ascribed to McKays' farm by the modified articles of agreement are not in harmony (i. e. $29,-500.00—equity, plus $15,000.00—encumbrance, equal $44,500.0, not $42,500.00).

Respondent K. E. Giese testified that the inked-in changes were made because Leon McKay "found fault" with the original articles of agreement. A basic fault found by McKay, Giese said, was that

"he wouldn't take 27–5 for his equity in his 80 acres [McKays' farm]. He wanted $2,000.00 more than that for his equity. He wanted 29–5. * * * I changed the items to fit Mr. McKay, to get his signature, as he would not sign it the way it was. We changed it to where he would sign it, and then I took it back to the Tarps with the changes, explained the changes carefully to them, told them they would * * * have to pay 29–5 for Mr. McKay's equity in the 80 acres that Mr. Tarp would take in trade. That is why the changes are on the original prelimi-nary Agreement. I changed the $62,380.-76 ["balance of the purchase price"] and raised that.

\* \* \* \* \* \*

"That had to be changed in order to make it fit, because of the additional $2,000.00 that McKay demanded for his equity in the place that he was willing to trade in to Mr. Tarp. I took this back to the Tarps and explained it to them, in detail, exactly what was involved, and got their initials on the contract. As was stated, I was not in my office.

\* \* \* \* \* \*

"I went out to the Tarp farm, got ahold of Mr. Tarp. He said it was all right by him, but he and his mother would be in the next morning. They came in the next morning. I went over it again with them. * * * They also initialed the change in McKay's demand from 27–5 to 29–5, and their initials are on here, all over it. *I did goof. I failed to change the $42,-500.00 figure,* which would be the overall figure, the cost of the McKay 80 acres. *I should have changed that figure to read 44–5 and I did not do* it. But we were trading equities, absolutely pure and simple trading equities." (Emphasis supplied.)

Leon McKay testified the articles of agreement instrument first was presented to him before it was altered and the changes initialed.—McKay's testimony contains the following:

"Q Was there more than one offer made to you before you finally settled on the terms?

"A Yes, there was.

"Q By this paper [the articles of agreement] or possibly other papers?

"A Yes.

"Q Approximately how many times?

"A Just once.

"Q Just one more before you signed this?

"A Yes, before we signed the Agreement there was an offer. It wasn't the

same Agreement that we had before. He went back with my offer to Mr. Tarp.

"Q When you signed this particular Agreement were these pencil marks and the initials on it?

"A As I recall, they were."

Appellants testified to the contrary that each of them understood the modified agreement to represent that there would be only a $13,000.00 encumbrance on McKays' farm ($42,500.00 agreed valuation less $29,500.00 equity), though the document expressly states such encumbrance ("certain escrow contract") to be in the amount of $15,000.00. Appellant Clements H. Tarp testified he thought McKay was supposed to "pay it [the $15,000.00 figure] down" to $13,000.00. Respondent K. E. Giese testified, as quoted above, that the confusion in figures exists because he "goofed" and did not raise the agreed total value figure from $42,500.00 to $44,500.00. But the Tarps both insisted that at no time before the sale did either know that the McKay property had an encumbrance with a balance of $15,000.00.

December 31, 1962, Tarps and McKays executed a sale or exchange contract termed an agreement of sale. It states the metes and bounds legal description of McKays' farm and provides that by assignment of all their right, title and interest in the farm McKays are furnishing to Tarps consideration in the amount of $29,500.00. The contract says agreed valuation of McKays' farm is $42,500.00, and states its transfer is subject to "a certain conditional sales contract [describing the encumbrances] * * *, all held in esrow with the Idaho First National Bank, at its Nampa, Idaho Branch." The contract of sale or exchange does not state the amount of such encumbrance. However, respondent K. E. Giese testified he personally brought appellant Clements H. Tarp to the bank's escrow department and showed him formal documents representing the $15,000.00 encumbrance before the sale or exchange contract was executed. C. H. Tarp denied this, saying that the trip took place some time after execution of the agreement of sale.

Concerning the agreement of sale's silence on the amount of McKays' farm's encumbrance, an Idaho attorney who prepared the agreement testified he worked directly from the October 27, 1962 articles of agreement, omitting the $15,000.00 amount of encumbrance because he considered it an unimportant figure. He said:

"A Usually, in my method of draftsmanship, I put in the first figure, which is the actual credit that the Buyer is receiving in one of these exchange contracts. To me this is the important figure, and I took the $29,500.00. I always, as a matter of draftsmanship, put in the amount that the total price of the Buyer's property is, and I usually do this for the parties' income tax purposes, and then he just recites it. In my own method of draftsmanship the fact that they assumed the Peter Johnson contract, the amount did not seem important. Had I put the amount in, I think that possibly I or the bank would have discovered the $2,000.00 discrepancy. In other words, $15,000.00 plus $29,500.00 would have equaled a $44,500.00, but it wasn't put in, and we didn't do the addition, and the bank who examines these obviously didn't either, or probably this error which is in the Articles of Agreement, Defendants' Exhibit No. 2, would have been discovered in proof-reading either by me or the bank."

April 17, 1964—the sale having taken place fifteen and one-half months earlier—appellants made a payment of $239.28 on the renewal note. Asked by respondents' counsel about this at trial, Clements Tarp said: "I was still trying to negotiate with him to settle the difference." However, respondents' counsel next asked Clements about an alleged previous offer to drop his claims if respondents stopped trying to collect the note. Clements denied this, explaining: "I said being as he owed me two thousand dollars or better I would take that much off of what he owed me * * *." This conversation took place, Clements said, in the early part of 1963. Clements' testimony is obviously inconsistent: in 1963 (as now) he

insisted respondents owed him at least two times the face of his promissory note, but nevertheless in April, 1964 he paid $239.28 on his note still trying to negotiate with him to settle the difference.

■ The district court found[5] that appellants Tarps knew when the contract of sale was negotiated that the balance of the encumbrance on McKays' property was $15,000.00 and that Tarps agreed to assume that balance. Respondent K. E. Giese's error, the court found, was only a computational mistake in failing to adjust the agreed total purchase value of McKays' farm from $42,500.00 to $44,500.00. The court also found appellants were in no way damaged by such computational mistake. These findings are supported adequately by the evidence and will not be distrubed.[6]

■ Appellants also assign error to the district court's ruling limiting their counsel's cross-examination of respondent K. E. Giese during respondents' case-in-chief. The prohibited cross-examination was directed to proof that Giese had so negligently conducted the exchange that there was no consideration for appellants' promissory note. The court limited the scope of questioning on grounds that appellants' inquiry was addressed to their case on the counterclaim. Appellants had full opportunity to elicit the desired information when Giese testified during respondents' rebuttal to appellants' case. In fact, appellants' counsel so thoroughly questioned Giese at such time that respondents' counsel objected on grounds of harassment. We find no prejudicial error in the challenged ruling.[7]

Judgment affirmed. Costs to respondents.

SMITH, C. J., and TAYLOR, McFADDEN and SPEAR, JJ., concur.

5. The pertinent findings include the following:

"9. That on or about October 27, 1962 a contract of sale was negotiated and a written contract was prepared, that the Defendant and Cross-Plaintiff exchanged properties with one Leon McKay by the said Defendants assuming and agreeing to pay the sum of FIFTEEN THOUSAND and NO/100 ($15,000.00) DOLLARS due on an escrow agreement on the Leon McKay property.

"10. The Defendants and Cross-Complaintants knew of the FIFTEEN THOUSAND and NO/100 ($15,000.00) DOLLARS and they agreed to assume that balance.
* * * * *
"12. That MR. GIESE made a mistake, in that the figure of FORTY-TWO THOUSAND FIVE HUNDRED and NO/100 ($42,500.00) DOLLARS as set out in the 'Articles of Agreement', and in the 'Agreement of Sale of Real Property' was an error of computation and should have been recited as FOURTY-FOUR THOUSAND FIVE HUNDRED and NO/100 ($44,500.00) DOLLARS.

"13. There was a meeting of the minds as of the balance due and owing as being FIFTEEN THOUSAND and NO/100 ($15,000.00) DOLLARS and the Defendants and Cross-Complaintants were advised of the balance due and owing, made payments thereon for a period of time, and during such time as payments were made were appraised of the balance owing and made no objection.

"14. That the McKays would not deal or trade properties, unless the figure was FIFTEEN THOUSAND NO/100 ($15,000.00) DOLLARS, and refused to deal with the figure of THIRTEEN THOUSAND and NO/100 ($13,000.00) DOLLARS that Defendants wanted.

"15. That Defendants and Cross-Complaintants did not suffer any damage as a result of the mistake in figures as set forth hereinabove."

6. Cf. cases cited n. 4 supra.

7. Cf. Idaho R.Civ.P. 61.