Dwight ZWICK (Defendant, Cross-claimant and Third-party Plaintiff below), and Zwick Ranch, Inc., a Minnesota Corporation (Third-party Plaintiff by joinder below), Appellants,

v.

UNITED FARM AGENCY, INC., a Minnesota Corporation (Third-party Defendant below), Appellee.

No. 4616.

Supreme Court of Wyoming.

Nov. 26, 1976.

Robert A. Hill, of Kirven & Hill, Buffalo, for appellants.

Lawrence A. Yonkee, of Redle, Yonkee & Arney, Sheridan, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

## FACTS

Appellants-third-party plaintiffs, Dwight Zwick and Zwick Ranch, Inc., filed their amended complaint in the District Court in and for Campbell County, Wyoming, on the 26th day of September, 1974, against United Farm Agency, Inc., appellee-third-party defendant, a real estate broker, in which Zwich and Zwick Ranch, Inc., claimed damages for negligence and misrepresentation of facts. While numerous parties were involved in the suit below, only Zwick and United are interested in this appeal.

Zwick owned a ranch in Minnesota and in February, 1966, listed it for sale with real estate broker, United, at its Erskine, Minnesota office operated by Jerry and Hazel Bernard. On Friday, April 15, 1966, potential buyers Gregg and Bartz made telephone contact with United about Zwick's ranch and came to Erskine the next day, Saturday, April 16th, to inspect it. On the last mentioned day Gregg and Bartz were introduced to Zwick and expressed an interest in acquiring the property for a corporation which was identified as Acoma West, Inc.

On Sunday, the 17th of April, the Bernards called V. R. Gillingham, the district manager of United, to aid in consummating the transaction, whereupon Gillingham came to Erskine that afternoon and the deal was finalized through execution of a "Deposit Receipt and Agreement for Sale" showing Acoma West, Inc., to be the purchaser—Dwight Zwick the seller—and the purchase price to be $600,000.00. No payment was made on April 17, but $175,000.00 was to be paid on the purchase price on June 15, 1966, it being agreed the transaction would be closed on that date, or sooner if title was found to be satisfactory.

It was further agreed:

"As expression of good faith, the buyers shall temporarily convey title to a certain trailer park located in Gillette, Wyoming into trust, to be deeded back upon completion of the terms of the contract."

The trailer park referred to was the "Westward Ho" located at Gillette, Wyoming and owned by Gregg, who was to convey it to Zwick in return for Acoma stock. Bartz was to furnish the $175,000.00 down payment and the Westward Ho deed was

to be held in trust by United, to be released to Zwick if the deal was not consummated but returned to the grantor if it was.

Gregg testified that upon signing the agreement on April 17, 1966, he executed a warranty deed to Acoma for the Westward Ho property, depositing it in the custody of Beal, attorney for Acoma. This instrument was never recorded and was subsequently returned to the possession of Gregg, who, in December, 1966, caused to be recorded a deed conveying the Westward Ho to Nellie B. Gregg, with Gregg shown therein as the grantor. On April 29, 1966, Bernards of United received a deed from Acoma to United for Westward Ho, dated April 20, 1966, which was recorded in Campbell County on June 9, 1966. At the time when the Acoma deed was executed, delivered and recorded, Acoma did not have record title to the property since the aforementioned deed from Gregg to Acoma was never recorded and was returned to Gregg, the grantor.

United, through Bernard, wrote Zwick on April 30, 1966, informing him that United had received the Westward Ho deed, showing Acoma as grantor and United as grantee and acknowledging that Bernard understood the agreement to have been that the conveyance was to have transferred Westward Ho from Gregg to Zwick, with United holding the deed in trust subject to the applicable terms of the Deposit Receipt and Agreement of Sale. The Bernards, in the same letter, said they planned to call the Gillette bank holding the mortgage on Westward Ho and inquire about the title.

The evidence showed the call revealed the Westward Ho appraised value to be $38,000.00, with a first mortgage in the amount of $12,000.00 and a second mortgage in the amount of $1,000.00. The bank represented to Bernard that Gregg was basically honest. This information was timely conveyed to Zwick.

United ordered a Dun and Bradstreet report on Gregg, Bartz and Acoma. The response, dated April 27, 1966, and other reports obtained about this time were generally negative, which information was, upon receipt, immediately conveyed to Zwick in May, 1966. Soon afterward Bartz vanished, inquiry revealing him to be totally without assets; in May of 1966 Gregg advised that Acoma could not perform its obligations.

In June of 1966, Gregg became associated with one Billy Joe Griffith, and together they attempted to renegotiate the purchase of Zwick's ranch. A written offer was made which included a tendered deed to the Westward Ho property. At this time United was holding the Acoma deed to Westward Ho in trust for Zwick, but Gregg's original unrecorded deed of Westward Ho to Acoma had, by then, been returned to him. Zwick did not, however, execute a contract with Gregg and Griffith for the sale and purchase of the ranch property and, in January, 1967, Zwick sold the ranch to others. Zwick and Gregg thereupon asked United for a conveyance of the Westward Ho property and in 1968 United did execute a quit claim deed which purported to quit claim any interest it may have had in the Westward Ho to Zwick. This deed was recorded in Campbell County January 31, 1968.

## ISSUES UPON APPEAL

The issues framed by appellants' brief are:

"1. Did United Farm Agency breach its fiduciary duty to its principals, Dwight Zwick and Zwick Ranch, Inc. for which damages should be awarded?

"2. Was the action of the plaintiffs barred by the four-year statute of limitations as provided by Section 1–18, W.S. 1957?"

## HOLDING

We hold that there was no negligence and no breach of United's alleged fiduciary duty to Zwick and therefore affirm the trial court. Since this holding is decisive of the case, we have no need to inquire into the

second issue enumerated above, namely, whether or not the appellants' claims are barred by the statute of limitations.[1]

In pursuit of its fiduciary-trust theory, appellants Zwick charge United with these kinds of breaches:

The broker did not determine the buyer's ability to pay.

The broker misrepresented the value of the Westward Ho trailer park and misrepresented whether it was encumbered.

The broker's agent prepared the contract and acting as a lawyer failed to furnish the principal with adequate legal protection.

The broker failed to disclose the failure of the contract between Acoma and Zwick and to timely disclose the fact of default.

The broker failed to divest itself of the trust asset—the deed to Westward Ho—at a time when such divestiture would have been of value.

■ The relationship extant between United and Zwick at all times material here was that of broker and principal. A broker is an agent of his principal, which relationship we have defined as one of representation by one for another in contractual negotiations or transactions akin thereto.[2]

■ Essentially, the duties and obligation owed by a broker to his employer are the same as those owed by any agent to his principal.[3] It is the broker's duty to exercise ordinary care under the circumstances.[4] A broker is obligated to

1. *Wallace v. Casper Adjustment Service,* Wyo., 500 P.2d 72, 73; *Druley v. Houdesheldt,* 75 Wyo. 155, 294 P.2d 351, 355, reh. den. 296 P.2d 251.

2. *Stockwell v. Morris,* 46 Wyo. 1, 8, 22 P.2d 189, 191.

3. *City of Chicago v. Barnett,* 404 Ill. 136, 88 N.E.2d 477; *McEvoy v. Ginsberg,* 345 Mass. 733, 189 N.E.2d 546; *Olson v. Penkert,* 252 Minn. 334, 90 N.W.2d 193; *Schepers v. Lautenschlager,* 173 Neb. 107, 112 N.W.2d 767.

4. It is said in 94 A.L.R.2d 468, 470, where the annotation is entitled "Liability of real-estate broker to principal for negligence in carrying out agency":
"§ 2. Degree of skill and care required, generally.

"It is the well-established rule that a real-estate broker, who is not a mere middleman, but is employed by a principal to act as agent in a real-estate transaction, is under a duty to exercise reasonable care and skill, or that degree of care and skill ordinarily employed by persons of common capacity engaged in the same business, and that a broker is liable to his principal for all consequences directly flowing from his failure to exercise such degree of ordinary care and skill in the handling of the matter entrusted to him.
"Alabama.—*Handley v. Shaffer* (1912) 177 Ala. 636, 59 So. 286.
"California.—*Wilson v. Hisey* (1957) 147 Cal.App.2d 433, 305 P.2d 686.

"Idaho.—*Frye v. Levanger* (1955) 76 Idaho 252, 281 P.2d 134.
"Illinois.—*Munford v. Miller* (1880) 7 Ill.App. 62.
"Kentucky.—*Shatz Realty Co. v. King* (1928) 225 Ky. 846, 10 S.W.2d 456, 60 A.L.R. 1374; *Smith v. Fidelity & C. Trust Co.* (1928) 227 Ky. 120, 12 S.W.2d 276, 62 A.L.R. 1353.
"Louisiana.—*Liuzza v. Stassi* (1955, La. App.) 83 So.2d 400.
"Minnesota.—*Witt v. John Blomquist, Inc.* (1957) 249 Minn. 32, 81 N.W.2d 265, 59 A.L.R.2d 1451.
"Missouri.—*Meyers v. Adler* (1915) 188 Mo.App. 607, 176 S.W. 538.
"New Jersey.—*Poniatowski v. Griffiths* (1918) 91 N.J.L. 663, 103 A. 192.
"New York.—*May v. Haight* (1926) 218 App.Div. 90, 218 N.Y.S. 241; *Irwin v. Rhoades* (1923, Sup.App.T.) 199 N.Y.S. 211.
"South Carolina.—*Lowrance v. Swaffield* (1923) 123 S.C. 331, 116 S.E. 278.
"Utah.—*Reese v. Harper* (1958) 8 Utah 2d 119, 329 P.2d 410.
"Washington.—*Mattieligh v. Poe* (1960) 57 Wash.2d 203, 356 P.2d 328, 94 A.L.R.2d 464."
See also 94 A.L.R.2d, Later Case Service, page 162, as follows:
"Cal.—*Stiefel v. McKee,* 1 Cal.App.3d 263, 81 Cal.Rptr. 565.
"Idaho.—*Giese v. Tarp,* 92 Idaho 243, 440 P.2d 521 (citing annotation).
"N. C.—*Carver v. Lykes,* 262 N.C. 345, 137 S.E.2d 139 (citing annotation)."

make full, fair and prompt disclosure to his principal of all the facts within his knowledge which are or might be material to the purpose of the agency.[5] The broker is bound to the highest degree of good faith.[6] In fact he usually acts as a fiduciary.[7] We have observed that, while a broker as a trustee must act in good faith, the trustee's good-faith obligation to his cestui que trust may be greater than that a broker owes to his principal, absent a trust relationship.[8] Included within these duties and obligations is the duty to transmit offers to the principal[9], as well as the duty to disclose the purchaser's financial condition if the broker has this knowledge.[10]

■■■■ The broker is not, however, liable for alleged duties not performed which are not within the contemplation of the contract[11], and he has no obligation to his principal by reason of the nonperformance of the contract by the other party.[12] He is not liable for a mere mistake in judgment which does not result from a failure to know or do that which a person of ordinary prudence under similar circumstances would know or do.[13]

With these concepts as our backdrop, we resolve the contentions of this appeal as follows:

■■■■ The trial court found by its judgment, which was general in nature, that United timely disclosed to its principal, Zwick, all facts it had with respect to ownership and title to the trailer park, the manner by which it would be conveyed and held in trust, its encumbrance, and its value.[14] As soon as reasonably possible, inquiry and disclosure were made and given relative to the financial condition of Acoma, Gregg and Bartz. While the facts were in controversy concerning these disclosures and inquiries, the trial court made a general finding in favor of United and it must therefore be presumed that all controverted issues of fact were resolved in favor of the appellee. A general finding is one of every special thing necessary to sustain the judgment.[15] This court must as-

---

5. 12 Am.Jur.2d Brokers § 89, p. 842; *Moore v. Turner*, 137 W.Va. 299, 71 S.E.2d 342, 32 A.L.R.2d 713.

6. *McCallum v. Maxwell*, 135 Cal.App. 580, 27 P.2d 925; *Jacobs v. Burke*, 168 Wash. 644, 13 P.2d 30; *Haymes v. Rogers*, 70 Ariz. 408, 222 P.2d 789, 17 A.L.R.2d 896; *Realty Company of America v. Burton*, 160 Cal.App. 2d 178, 325 P.2d 171; *Graber v. Tennant*, 173 Kan. 577, 250 P.2d 816; and *Westerbeck v. Cannon*, 5 Wash.2d 106, 104 P.2d 918.

7. *Eastburn v. Joseph Espalla, Jr. & Co.*, 215 Ala. 650, 112 So. 232, 53 A.L.R. 134; *Kurtz v. Farrington*, 104 Conn. 257, 132 A. 540, 48 A.L.R. 259; *Berenson v. Nirenstein*, 326 Mass. 285, 93 N.E.2d 610, 20 A.L.R.2d 1136; *Schepers v. Lautenschlager*, 173 Neb. 107, 112 N.W.2d 767; *Sexton v. Kelly*, 185 Or. 1, 200 P.2d 950; and *Olson v. Brickles*, 203 Va. 447, 124 S.E.2d 895.

8. *Dallas Dome Wyoming Oil Fields Co. v. Brooder*, 55 Wyo. 109, 97 P.2d 311.

9. *Holmes v. Cathcart*, 88 Minn. 213, 92 N.W. 956, 60 L.R.A. 734, 7 A.L.R.3d 693; 12 Am.Jur.2d Brokers § 90, p. 843.

10. *Hardy v. Davis*, 223 Md. 229, 164 A.2d 281; *R. A. Poff & Co. v. Ottaway*, 191 Va. 779, 62 S.E.2d 865.

11. *Frye v. Levanger*, 76 Idaho 252, 281 P.2d 134.

12. *Beebe v. Robert*, 12 Wendell (N.Y.) 413.

13. *Smith v. Fidelity & Columbia Trust Co.*, 227 Ky. 120, 12 S.W.2d 276, 62 A.L.R. 1353; *Carver v. Lykes*, 262 N.C. 345, 137 S.E.2d 139.

14. Mr. Gillingham, United's District Manager, testified:

"A Mr. Zwick was informed at all times everything we were possessed of as far as knowledge on the trailer court, which was practically nil, except Bill Gregg had said that it was worth eighty to one hundred thousand dollars, and there was a lien against it for sixteen to twenty thousand dollars, and Zwick was told this. Zwick was told we didn't know anything about Bill Gregg except—am I getting ahead of the questions?

"Q It is all right.

"A Except that he apparently had a lot of ranching experience."

15. *Jacoby v. Town of City of Gillette*, 62 Wyo. 487, 174 P.2d 505, reh.den. 62 Wyo. 487, 177 P.2d 204.

sume the truth of the evidence in favor of United and give it every favorable inference that may be reasonably drawn.[16]

In the appellants' brief it is argued that United did not search for a buyer as it was its duty to do. This was not an issue in the trial court and we will not consider it [17], except to make the following observations: There was a subsequent offer from Gregg and another associate tendered to Zwick, which he did not reject and which was pending until long after any workable agency relationship between United and Zwick had broken down; no authority has been offered to show more than a duty to search for a buyer, and the breach of such duty may result in a claim for actual damages. Even if these duties and the breach thereof were assumed, arguendo, appellants have proven no damages resulting therefrom.

It is the further contention of the appellants that United had an obligation to investigate the title to the property and the financial condition of the buyers before Zwick signed the contract with Acoma. Zwick knew that there was no time for such investigation between the occasion when the agents for Acoma first contacted United and Zwick and the execution of the sales contract.

In this regard, Mr. Gillingham of United testified:

"Q What did you advise Mr. Zwick with respect to the desirability of entering into an arrangement like this?

"A We told him it was his property, that we would do our best to check these people out if he wanted to accept it, but that we knew nothing about them as yet, but would have Dun and Bradstreet check them out as soon as they could,

but it was up to him whether to accept the offer or not."

Not only was Zwick on notice that there had been no investigation of the buyers before the signing of the contract, but the law permits the broker to assume that a prospective buyer is both truthful and candid unless he has notice or knowledge to the contrary.[18] Zwick elected to sign the sales agreement with full knowledge that a thorough investigation had not been made. This decision cannot now be translated as United's negligence.

In the absence of proof of damages, the acceptance of a worthless deed as a good faith earnest tender does not constitute grounds for Zwick's recovery, especially where United revealed all it knew about the transaction to Zwick and at no time acted in bad faith or beyond the scope of its authority. Where a purchaser was financially irresponsible and a real estate agent accepted a worthless note as an earnest tender, the Minnesota Supreme Court held that, absent a damage showing, the vendor could not recover the amount of the earnest money from the agent even if the agent had been negligent or had acted in bad faith.[19] Zwick's claim for recovery from United is even weaker.

No damages flowed from United's failure to earlier convey Westward Ho to Zwick. This is so because neither United nor Acoma had title to Westward Ho after Acoma redelivered the unrecorded deed to Gregg and in which deed Gregg as grantor had conveyed the Westward Ho properties to Acoma instead of Zwick as the agreement called for.

Whether or not a broker who draws a contract under conditions where he can be thought about as practicing law and thus

16. *Producers Livestock Marketing Ass'n v. Parker Land & Cattle Co.*, Wyo., 509 P.2d 345.

17. *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 519 P.2d 972, 978.

18. 12 Am.Jur.2d Brokers § 97.

19. *Witt v. Blomquist, Inc.*, 249 Minn. 32, 81 N.W.2d 265, 59 A.L.R.2d 1451.

held to an attorney's strict standards of excellence[20] need not be specifically discussed because the record in this appeal does not show that Zwick was misled by the contract, that he did not understand it, or that he was left unprotected by it in any manner concerning which United had any obligation to protect him. Zwick's damages did not flow from the manner in which the contract was drafted.

For the reasons stated herein and under the authorities cited, the trial court is affirmed.

---

20. It was said in *Mattieligh v. Poe*, 57 Wash. 2d 203, 356 P.2d 328:

" . . . When a broker undertakes to practice law, he is liable for negligence. It is immaterial whether the broker's attempt to prepare a contract, such as had been authorized by his client, failed because of his ignorance, stupidity, incompetence, negligence or fraud. *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16, 65 A.L.R.2d 1358. *Latson v. Eaton,* Okl., 341 P.2d 247." [Footnote to *Biakanja* case omitted.]

