ISRAEL GOLDSTEIN, Plaintiff, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

City Court of New York, Trial Term, New York County, August 17, 1936.

*Powers, Kaplan & Berger* [*Abraham Kaplan* of counsel], for the plaintiff.

*Alexander & Green* [*James D. Ewing* of counsel], for the defendant.

LA FETRA, Ch. J. This is an action to recover for permanent disability benefits under policies of insurance issued by the defendant-insurer to the plaintiff-insured in October of 1931.

The insurer concedes the disability as of April 19, 1935. It interposes equitable defenses. They are in substance that the disability provisions of the policies are voidable because of certain false representations made by the insured which appear in his applications. It claims they were made to induce it to accept the risk; that relying upon the same it was deceived; that the statements were material, were willfully false, untrue and fraudulent. Upon learning of this falsity, it now seeks to rescind the policies.

The applications contain a series of questions to be answered by the insured in relation to his health.

The insurer contends the insured was suffering from arteriosclerosis, from interstitial nephritis, numbness and nervousness.

It is admitted the insured complained of headaches and was given the usual treatment for such ailments. He undoubtedly placed confidence in the opinions of his diagnosticians that he was a normal and healthy person. He was advised to cease from too much business activity, to stop worrying about his involved business affairs, and was cautioned to seek rest and quiet. In other words, he was told to lead a normal life. The answers to the questions propounded in the applications were innocently made, were honest and truthful.

The evidence demonstrates that he was in good health prior to the appearance of the symptoms of interstitial nephritis which culminated in his total disability. There is a break between cause and effect of this progressive disease. The medical history is not complete.

When he was asked to state whether he had been treated or had consulted a physician for his disorder, he was under no duty to recall ordinary visits for advice as to minor ills.

In the trials of *Nowack* v. *Brotherhood of American Yeomen* the judgments in favor of the plaintiffs were affirmed (221 App. Div. 832), but were reversed (249 N. Y. 78). A new trial was had and special verdicts in favor of the plaintiffs were set aside by the trial judge, and it was held upon appeal (226 App. Div. 123, 125) " that the trial court erred in setting aside the special verdict, and in directing a general verdict for the defendant. The special verdict of the jury should be reinstated, and judgment should be directed for the plaintiffs in each action for the amount of the policy, together with interest and costs." These determinations were affirmed (252 N. Y. 465). (See, also, *Jenkins* v. *John Hancock Mutual Life Ins. Co.*, 257 id. 289; Insurance Law, § 58.)

During the trial of the case at bar the court was called upon to draw many distinctions upon the introduction of evidence during the examination of the numerous witnesses called on behalf of the respective parties.

It should be borne in mind that " where the subject-matter of inquiry is such that it may be presumed to lie within the common experience of all men of common education, moving in the ordinary walks of life," such knowledge is admissible in evidence. However, where the inquiry is into a subject " of science or skill, or one of which observation and experience have given the opportunity and means of knowledge, which exists in reasons rather than

descriptive facts, and therefore cannot be intelligently communicated to others not familiar with the subject so as to possess them with a full understanding " of the same, common knowledge is inadmissible and expert testimony should be adduced. (Rogers Expert Testimony [2d ed.], pp. 24–26, etc.)

The insurer did not rely upon the statements of the insured and caused a thorough medical examination to be made of him before delivery of the policies.

" Every kind of artifice employed by one person to deceive another has been defined as fraud." (Hanover Law on Horses [2d ed. 1875], p. 13.)

" While this will answer for a general definition of fraud, human ingenuity has clothed it with so many guises that it is found very difficult to give a definition which fraud will not find some means of evading; but while it is so difficult to define what fraud is in all cases, there are certain elements readily pointed out which is essential to constitute legal fraud." (Id. p. 156.)

" It is essential to constitute a fraud that the means used should be successful in deceiving; for it matters not how false the representation, or how ingenious the artifice used, if the party to whom they are used knows the truth, and sees through the devices. And where a contract is made under these circumstances, it is plain that the inducement is something else than the fraudulent representations." (Id. p. 156.)

" The deceit necessary to constitute a fraud may be active, as by the statement of falsehood; or the necessary deceit may be passive, by silence when it is a duty to speak. The former is usually discussed under the head of misrepresentations, the latter under concealment." (Id. p. 157.)

" Concealment of a fact is fraudulent whenever there is, on the part of the person concealing it, some legal or equitable obligation to divulge it. But this obligation must be something more than moral or honory." (Id. p. 158.)

From the rights so created under those fundamental doctrines grow various remedies for their enforcement both in law and equity.

Judgment is hereby directed in favor of the plaintiff for the disability benefits which have accrued to date under the policies of insurance issued to him by the defendant, together with interest thereon, to wit, in the sum of $2,593.25, interest subject to correction. (New York City Court Act, § 24.)