William B. MYER, and C. Clark Bromley
d/b/a Cowboy Travel, Inc., Appellants
(Defendants),

v.

Michael W. MILLER, and Laurel L.
(Clapp) Miller, Appellees
(Plaintiffs).

Michael W. MILLER, and Laurel L.
(Clapp) Miller, Appellants
(Plaintiffs),

v.

William B. MYER, and C. Clark Bromley
d/b/a Cowboy Travel, Inc., Appellees
(Defendants).

Nos. 5462, 5463.

Supreme Court of Wyoming.

July 20, 1981.

Frank R. Chapman of Wass, Willoughby, Zwickl & Chapman, Casper, for appellants (cross-appellees).

Richard V. Gose, Casper, for appellees (cross-appellants).

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Appellees brought this action in the trial court to recover monies paid appellants pursuant to a purchase contract on the theory that the business purchased had a net worth substantially less than represented. Appellants counter by claiming appellee Laurel Miller breached a fiduciary duty to appellants. The issues on appeal are:

1. Did appellee Laurel Miller owe a fiduciary duty to appellants?

2. Did appellee Laurel Miller breach a fiduciary duty?

3. Did the trial court commit reversible error when it stated in its findings of fact that the "contract constituted an accord and satisfaction as to any agreement prior to the 24th of January, 1977"?

We will affirm.[1]

Cowboy Travel, Inc., a travel agency, was listed by its owners, appellants, for sale with Brokerage House I on October 27, 1978. The listing agent was Joe Cavanaugh, an agent for Brokerage House I. Appellee Laurel Miller was the manager of Brokerage House II, and also a broker and agent for that agency. At the time of the transaction in question Brokerage House I and II were branch offices of Brokerage House, Incorporated and either branch could sell property listed with the other branch.

Appellees became interested in purchasing the stock in Cowboy Travel, Inc., and communicated this interest to appellants sometime in late December 1978, or early January 1979.[2] The parties reached an agreement on January 24, 1979. The purchase contract was signed and the transaction closed.

A few days prior to closing, appellee Laurel Miller had her brother-in-law, John T. Bush, a public accountant, prepare a statement of estimated net worth of Cowboy Travel, Inc. Mr. Bush told appellee Laurel Miller and her attorney that because of the short period of time, his statement of net worth could not be completely accurate. Mr. Bush was advised that the statement did not have to be accurate "to the penny," but that it should be reasonably close.

The statement of estimated net worth prepared by Mr. Bush from the books and records of Cowboy Travel, Inc., reflected the financial condition of the company as of September 30, 1978. Appellants were not aware that Mr. Bush was preparing the statement, nor were they aware of the instructions given to him.

The statement of estimated net worth was attached to and made part of the purchase contract between the parties. The contract provided that the statement of estimated net worth substantially reflected the financial condition of Cowboy Travel, Inc. as of the date of their contract, that is, January 24, 1979. The statement showed a net worth of $11,607. In the listing agreement dated October 27, 1978, appellants represented that assets exceeded liabilities by $12,800.

After the execution of the purchase contract it was determined that the actual net worth of Cowboy Travel, Inc., was $2,363 as of January 24, 1979. Because of the substantial difference between the estimated net worth and the actual net worth appellees brought this suit in the trial court to recover monies paid under the contract.

1. Case No. 5463 is a cross appeal and was consolidated with Case No. 5462 for hearing before this court. In this opinion we will only address the issues raised in Case No. 5462. Our disposition of Case No. 5462 renders the issues on appeal in Case No. 5463 moot.

2. Witnesses could not remember certain specific dates; therefore, they answered some questions regarding dates as within a time frame rather than an exact date.

Paragraph 14 of the Purchase Contract[3] provided for the return to the buyer of all purchase money in the event the net worth of Cowboy Travel, Inc., was found to be substantially less than initially represented. Appellees were justified in calling to an end[4] the purchase contract of January 24, 1979, and seeking recovery of monies paid according to its terms.

Appellants seek to avoid the consequences of Paragraph 14 alleging that appellee Laurel Miller as an agent of Brokerage House, Inc., was a fiduciary and that she violated her duties.

The first question is whether appellee Laurel Miller was appellants' agent. We must begin with the general premise that a brokerage firm is the agent of the seller. There can be no question that Brokerage House, Inc., became appellants' agent when it obtained the exclusive listing for the sale of appellants' business. It therefore follows that because appellee Laurel Miller was a broker, agent and manager of Brokerage House II, a branch of Brokerage House, Inc., she was also appellants' agent. *Frisell v. Newman*, 71 Wash.2d 520, 429 P.2d 864 (1967).

Certain duties and obligations spring from this type of agency relationship. As we stated in *Zwick v. United Farm Agency, Inc.*, Wyo., 556 P.2d 508, 511–512 (1976):

"Essentially, the duties and obligation owed by a broker to his employer are the same as those owed by any agent to his principal. It is the broker's duty to exercise ordinary care under the circumstances. [Citations in footnote 4.] A broker is obligated to make full, fair and prompt disclosure to his principal of all the facts within his knowledge which are or might be material to the purpose of the agency. [Citations in footnote 5.] The broker is bound to the highest degree of good faith. [Citations in footnote 6.] In fact he usually acts as a fiduciary. [Citations in footnote 7.] * * *"[5]

We further said in *Zwick v. United Farm Agency, Inc.*, supra, at 511, quoting 94 A.L. R.2d 468, 470:

"'It is the well established rule that a real-estate broker, who is not a mere middleman, but is employed by a principal to act as agent in a real-estate transaction, is under a duty to exercise reasonable care and skill, or that degree of care and skill ordinarily employed by persons of common capacity engaged in the same business, and that a broker is liable to his principal for all consequences directly flowing from his failure to exercise such degree of ordinary care and skill in the handling of the matter entrusted to him.'"

In addition, not only must a real estate broker or agent act in good faith towards its principal, but must refrain from

3. Purchase Contract, paragraph 14:
"The Buyers and Seller have established by the attached accounting representations of Cowboy Travel, Inc., that the assets and liabilities are substantially the same and that the net assets or net value as shown by the attached accounting balance statement, truly represent the financial status of Cowboy Travel, Inc., as of January 24, 1979, and *in the event that the assets and liabilities are so different and the net is different so as to cause a substantial difference in the value of Cowboy Travel, Inc. that the Buyers shall have the right to consider the substantial changes as conditions to this contract, and call to an end the contract for the purchase of such* and receive as returned monies all of those payments made to the Seller to that date. The Buyers have until closing of this transaction, on or before June 24, 1979, to establish the substantive compliance with respect to this paragraph, as it relates to the balance statement of Cowboy Travel, Inc." (Emphasis added.)

4. "Call to an end" is the term used by the parties in their contract to terminate their agreement.

5. According to the State of Wyoming Real Estate Manual (June 1979), an agent owes four basic duties to his principal: 1) To perform the agency agreement; 2) to be loyal to his principal; 3) to use reasonable care in performing the agency; and to account for all money and property received. (P. 42.) While the listing in this case was stock rather than real estate, appellees do not dispute that appellee Laurel Miller owed a fiduciary duty substantially as that set out in the Real Estate Manual.

obtaining any advantage over the principal because of this relationship. *In re Estate of Baldwin*, 34 Cal.App.3d 596, 603, 110 Cal.Rptr. 189, 195 (1973).

Even though the broker or agent owes a duty to its principal, the fiduciary is not precluded from purchasing the property from such principal. Because of the dual capacity of agent and purchaser, however, the agent must reveal to the principal that the agent is purchasing the property in addition to fully disclosing to the principal all other relevant facts. *In re Estate of Baldwin*, supra, 110 Cal.Rptr. at 195; *M.S.R., Inc. v. Lish*, 34 Colo.App. 320, 527 P.2d 912, 914 (1974); *First Trust Co. of Montana v. McKenna*, Mont., 614 P.2d 1027, 1030 (1980).

In *Hoge v. George*, 27 Wyo. 423, 200 P. 96, 101 (1921), we stated:

" * * * [T]here is a presumption of fraud in every case where a fiduciary profits by a transaction with the person who confides in him. To overcome the presumption, it must be shown that he who seeks to uphold the contract communicated to the other * * * all information which it was important for the other to know. * * * "

Here it is not contended that appellee did not disclose to appellants that she was purchasing the property. Appellants, however, assert that appellee Laurel Miller breached her fiduciary duty in that she did not adequately supervise accountant Bush; that she did not adequately disclose to appellants that Bush's estimated net worth statement would not be accurate; that she did not adequately advise appellants that she had terminated the agency agreement and was negotiating on her own interests in the sale of the business; that she did not disclose to appellants that attorney Richard G. Gose represented appellees rather than all the parties; and, that she did not otherwise make a full disclosure of her status and position in purchasing the stock.

Appellees answer that the agency relationship was terminated prior to the sale of stock, which precluded the existence of a fiduciary obligation; and that in any event,

appellee Laurel Miller fully disclosed all relevant facts known to her.

An agency relationship did exist between appellee Laurel Miller and appellants at the time the purchase contract was executed on January 24, 1979. The question, therefore, is whether appellee Laurel Miller made a complete disclosure of all material facts within her knowledge to appellants, and whether appellees used ordinary care under the circumstances.

The trial judge found that the fiduciary duty to appellants was discharged when appellee Laurel Miller disclosed all relevant facts known to her and acted with ordinary care. As the trial judge stated in the Findings of Fact:

"The parties dealt openly with each other during contract negotiations... There was no deception, no overreaching and no advantage was taken between these plaintiffs and these defendants."

It is a basic rule of appellate procedure that we will not substitute our judgment for that of the trial judge's where the record contains evidence to support his decision. *Elder v. Jones*, Wyo., 608 P.2d 654, 660 (1980).

As discussed earlier, in late December 1978, or early January 1979, appellees disclosed to appellants that they were interested in purchasing the stock in Cowboy Travel, Inc. The parties then proceeded to negotiate a contract which was signed January 24, 1979. These negotiations took place prior to Mr. Bush's preparation of statement of estimated net worth.

The listing agreement was not terminated nor cancelled by a written instrument, and the parties did not orally agree that the listing agreement be cancelled. Brokerage House, Inc., received from appellants a $3,000 commission for the sale of the business. This commission was divided as follows: Joe Cavanaugh received $900 as the listing agent and Laurel Miller received $2,100 discount.

The record reflects that appellants knew at all times that Mr. Gose represented ap-

pellees. Appellants had legal counsel during the negotiations on the purchase contract. Even though appellee did not disclose the fact that her accountant did not feel that he had enough time to prepare an accurate financial statement, appellee did suggest to appellants that they have their own attorney and accountant review the contract. Appellants were invited by Laurel Miller to have their accountant review Mr. Bush's work. They said, "They didn't feel like it would be necessary."

Appellants complain that because of accountant Bush's inaccurate statement of net worth they were damaged, although it was never proven that the statement was inaccurate. As noted earlier, the statement purported to reflect the net worth of Cowboy Travel, Inc., as of September 30, 1978, which, according to Bush's estimate, was $11,607. It was later determined that as of January 24, 1979, the net worth was $2,363. For all we know the assets could have disappeared or were dissipated between September 30, 1978 and January 24, 1979. There was no evidence to the contrary. In fact, as we noted earlier, appellants represent in the listing agreement dated October 27, 1978, that the assets of the business exceeded the liabilities by $12,800.

■ Appellants' final contention is that the trial judge erred when he stated in the Findings of Fact that:

"The parties dealt openly with each other during contract negotiations and *the above described contract constituted an accord and satisfaction as to any agreement prior to the 24th day of January, 1979.* There was no deception, no overreaching and no advantage was taken between these Plaintiffs and these Defendants." (Emphasis added.)

Because we have determined that the record demonstrates that the listing agreement was still in effect at the time of the sale and that Laurel Miller was appellants' agent, it is not necessary to determine whether the sale contract constituted an accord and satisfaction. Even if we were to find that the trial judge was incorrect in finding that there was an accord and satisfaction, this error does not require reversal of the judgment because the judgment is sustainable upon other grounds. As we stated in *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535, 538 (1975), "even though the trial court's basis of decision is incorrect, if it is sustainable on another theory it should not be reversed."

We hold that even though the theory upon which the trial judge decided the case may have been incorrect, his judgment can nevertheless be affirmed on the basis that the fiduciary, Laurel Miller, fully discharged her duties to the appellants, as found by the trial judge.

Affirmed.