873 F.2d 1441
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis Wayne UPSHAW, a/k/a C.W. Upshaw, Defendant-Appellant.
 No. 88-5136.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 13, 1989.
Decided: April 12, 1989.
 
 James B. Craven, III, for appellant.
 Lisa B. Boggs, Assistant United States Attorney (Robert H. Edmunds, Jr., United States Attorney, on brief), for appellee.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and RICHARD B. KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Curtis Wayne Upshaw appeals his conviction and sentencing for bank fraud in violation of 18 U.S.C. Sec. 1344, use of a false social security number with intent to deceive, in violation of 42 U.S.C. Sec. 408(g)(2), and interstate transportation of property obtained by fraud in violation of 18 U.S.C. Sec. 2314, asserting the evidence fails to support the charges. Finding his contentions without merit, we affirm.
 
 
 2
 Tried to the jury, it returned a verdict of guilty on each of the three charges. Defendant raises no challenge to any portion of the jury charge as given. Hence, the evidence and circumstances, including reasonable inferences drawn therefrom, must be viewed in the light most favorable to the United States, and the verdict must be upheld if there is evidence to support it. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457 (1942); Hamlin v. United States, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911 (1974); Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 2793 (1979); United States v. Stockton, 788 F.2d 210 (4th Cir.1986), cert. denied, 107 S.Ct. 147.
 
 
 3
 Turning to the facts of the case, the evidence establishes and the jury found that in late 1987 and early 1988, defendant filled out several bank credit and loan applications which contained false information as to his date of birth, social security number and prior address. In late 1987, defendant opened a checking account at Barnett Bank of Florida, at Tampa, under the name of Great Western Corporation, with himself as the only authorized signator. His only deposit in that account was a check for $1,000.00 which was returned for insufficient funds. Nine checks were written on this account in the sum of $2,746.21. The only other deposit to that account was $123.00 made by the bank to take the account from a negative of $123.00 balance to a zero balance and officially close the account. The account was closed January 29, 1988. Two other checks, for a total of $2,633.00, were written on that account. As a result of this account, the bank lost $123.00.
 
 
 4
 On February 8, 1988, defendant opened an account in his name at First Union National Bank in Winston Salem, North Carolina, saying he wanted to establish a line of credit and wanted to have some money transferred from his account at First National Bank of Maryland, Baltimore. Based on information which defendant furnished, the service representative at First Union prepared and sent to Baltimore a sight draft for said funds. Defendant had no account in his name, and there was no such bank in Baltimore. He filled out a First Choice Line of Credit application and filed it with First Union. In it, he reduced his age by six years, gave his son's social security number as his, and stated he had a Wyoming driver's license. He deposited in that account two checks, the first for $2,200.00 and the other for $3,705.11 drawn by him on the Barnett Bank in Tampa. As a result of these deposits, a bank officer authorized the granting of credit. Each of these checks was returned by the Barnett Bank unpaid as the account on which they were drawn had been closed as of January 29th. Defendant went to Wachovia Bank and Trust Company in Winston Salem and attempted to open an account, telling the service manager that he had money in an account in the First National Bank of Maryland, Baltimore. A sight draft was prepared and sent to Baltimore to obtain those funds. No funds were obtained. Defendant told Wachovia he was a medical student at Wake Forest University.
 
 
 5
 From the starter checks given him after his deposit of the $2,200.00 check in First Union, he drew a check for $1,500.00 to cover a down payment to Flow Motors, Incorporated of Winston Salem, toward the lease of a Porsche automobile. This check was returned unpaid. Defendant furnished the information necessary to complete the paper work for the Porsche lease on a form entitled "Indirect Loan Application" furnished by North Carolina National Bank (NCNB) which defendant signed. He told Flow Motors he was from Wyoming, that his father was a physician, and showed them records from Wachovia, including the Maryland sight draft. This loan application was forwarded to NCNB to determine whether the credit information justified the lease. The loan application was accepted, the lease was approved, and defendant took possession of the Porsche. When the $1,500.00 check was returned for insufficient funds, and NCNB learned the defendant did not have a Wyoming driver's license, NCNB repossessed the Porsche from defendant in Florida.
 
 
 6
 On the four applications which defendant filled out in February 1988, he used his son's social security number instead of his own, he used an address as 2012 Rustic Drive, Casper, Wyoming, saying he had lived there some 25 years. However, he admitted on cross examination that the title documents issued for 2012 Rustic Drive indicated the house was only two years old.
 
 
 7
 There was also evidence that in an application for rental of an apartment, he used his son's social security number, understated his age by six years, gave a prior address in Casper, Wyoming, where he said his parents lived and he had lived for 25 years, and that he left to go to medical school. He further said he worked at Great Western at a salary of $130,000.00 and that it was a family business. At Market Access Promotions, he identified himself as John Upshaw, and paid for services with a check for $21.63 which bounced. There was also evidence that defendant had used a false social security number when renting a vehicle in Texas. At the time of his arrest, he gave the FBI Agent false biographical data, including name and address. After being advised of his rights, he advised the agent he knew he had done wrong; that he was having financial problems and he needed the money.
 
 
 8
 The evidence established that in obtaining credit information, the applicants name, address, former address and social security number are important, and where a different social security number and address are used, a different credit history would be obtained, especially when seeking credit reports. As a result of defendant's actions, First Union sustained a loss of $4,505.00, Flow Motors sustained a loss of $1,500.00, NCNB sustained a loss of $932.70, and Market Access Promotions sustained a loss of $21.63, in addition to the loss by Barnett Bank set out above.
 
 
 9
 The evidence amply supports the jury's finding that (1) pursuant to 18 U.S.C. Sec. 1344, defendant knowingly executed or attempted to execute a scheme or artifice to defraud a federally chartered or insured financial institution and to obtain money, credit and assets under the custody and control of such institution by means of false and fraudulent pretense and representation as set forth in United States v. Bales, 813 F.2d 1289 (4th Cir.1987); (2) that in violation of 42 U.S.C. Sec. 408(g)(2) and for the purpose of obtaining something of value, and with intent to deceive, defendant knowingly falsely represented and used another person's social security number to be his social security number, also set forth in Bales; and (3) in violation of 18 U.S.C. Sec. 2314, the defendant transported in interstate commerce goods, wares or merchandise of the value of $5,000.00 or more, knowing the same to have been stolen or obtained by fraud.
 
 
 10
 In general, "fraud comprises all acts, conduct, omissions and concealment involving breach of a legal or equitable duty and resulting in damage to another." Isaac v. United States, 301 F.2d 706, 713 (8th Cir.1962), cert. denied. 371 U.S. 818.
 
 
 11
 Plaintiff contends that although the Porsche was transported from North Carolina to Florida where it was repossessed, that in as much as the Porsche was repossessed by NCNB before the first installment of rent under the lease became due and payable, the Porsche could not be a stolen vehicle and he could not be convicted under Sec. 2314. That statute not only covers the transportation of properties stolen, but also those "taken by fraud." Defendant acquired the possession and lease of the Porsche by fraudulent misrepresentations of his social security number, his former residence, his financial position, that he had a Wyoming driver's license, and giving of a bad check.
 
 
 12
 Possession, or title, are no defense where they have been obtained by fraud. United States v. Mucci, 630 F.2d 737 (10th Cir.1980); Gay v. United States, 408 F.2d 923 (8th Cir.1969), cert. denied, 396 U.S. 823; see also Bales, supra.
 
 
 13
 The evidence being sufficient to establish each of the elements for each of the offenses, the judgment of conviction is
 
 
 14
 AFFIRMED.