UNITED STATES of America,
Plaintiff,

v.

Marvin G. SCHWAB, Daniel
A. Schwab, and Vance S.
Schwab, Defendants.

No. 99–CR–171–J.

United States District Court,
D. Wyoming.

March 6, 2000.

1276

Robert B. Carroll, Cheyenne, WY, for Marvin G. Schwab, defendant.

G. Kevin Keller, Cheyenne, WY, Lowell H. Becraft, Jr, Huntsville, AL, for Daniel A. Schwab, defendant.

James K. Lubing, Jackson, WY, for David W. Horsley, Jr, defendant.

Ronald L. Brown, Fort Collins, CO, for Vance S. Schwab, defendant.

**ORDER DENYING MOTION TO STRIKE SURPLUSAGE AND TO DISMISS INDICTMENT ON THE BASIS OF FAILURE TO PLEAD ESSENTIAL ELEMENT; ORDER DENYING VANCE SCHWAB'S MOTIONS TO DISMISS FOR LACK OF FIDUCIARY RESPON-SIBILITY**

ALAN B. JOHNSON, District Judge.

The defendant Marvin Schwab's Motion to Strike Surplusage [Tabs 55 and 56], which has been joined by all defendants, the government's response in opposition to the motion [Tab 97], the motions to dismiss for lack of fiduciary responsibility filed by defendant Vance Schwab [Tabs 60 and 61],

the government's responses in opposition to Vance Schwab's motions [Tabs 89 and 91] came before the Court for hearing and argument on February 11, 2000. After considering the parties' written submissions and the arguments of counsel, the Court has determined that the defendants' motions should be DENIED for the reasons stated below.

### Parties' Contentions

### A. Defendants' Contentions and Argument

The defendants argue in this motion that the Indictment fails to allege an essential element of the offense, i.e., that the defendants obtained money or property by fraud. They seek to have the Indictment dismissed because it fails to allege the essential fraud element of the offense.

Vance Schwab argues as well that the counts against him fail for lack of fiduciary responsibility because he was an independent contractor who owed no fiduciary responsibilities to the insurance companies. Because the allegations of fraud are based on non-disclosure to the insurance companies, in the absence of a fiduciary relationship between the defendant and the insurance company no duty to disclose arises, no fiduciary obligation exists, and the claims for fraud fail.

Defendants cite authority they contend supports the proposition that an indictment charging a § 2314 violation which does not allege specifically "unlawful and fraudulent intent" is void and must be dismissed.

Defendants contend that the indictment attempts to plead the fraud element through the following allegations: (1) the indictment alleges [¶ 31] that the defendants committed fraud upon the victim insurance companies by failing to disclose certain matters to them; (2) the indictment alleges that the victim insurance companies expected that policies sold by the defendants would be continued at the first and subsequent anniversaries, but when the policies were not continued, the companies were defrauded.

Defendants argue that Wyoming law is relevant in the case. Under Wyoming law, "the elements of a claim for relief for fraud are a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true." *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo. 1985). The indictment does not allege that defendants made false representations. Rather, the indictment alleges the defendants failed to make disclosures required of them by law. Defendants argue that a comparable state law indictment for fraud alleging non-disclosure could not be maintained under Wyoming law.

They also argue that no Wyoming statute or insurance department regulations would have required the defendants to make disclosures to the insurance companies and that the applicable contracts of the defendants with the insurance companies did not require such disclosures. The agency contracts between defendants and the insurance companies stated the defendants were independent contractors. The defendants are agents of the insured, not the insurer. No duty to disclose information to the companies exists under applicable law, in the defendants' views.

Section 2314 at issue here relates to whether the defendants took the property by fraud. Supreme Court cases define fraud as "the telling of an untruth, knowing it to be an untruth, with intent to induce a man to alter his condition, and his altering his condition in consequence whereby he sustains damage." *Ming v. Woolfolk,* 116 U.S. 599, 602–03, 6 S.Ct. 489, 29 L.Ed. 740 (1886). Fraud may not be presumed and the representations made must be in regard to a material fact, false and acted upon by the other party in ignorance of its falsity with a reasonable belief that it was true. Non-disclosures are fraudulent only if a fiduciary or trust relationship exists between the parties, citing *Chiarella v. United States,* 445 U.S. 222,

235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980), *Dirks v. S.E.C.*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); and *Central Bank of Denver N.A. v. First Interstate Bank of Denver, Inc.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). This rule is followed in the Tenth Circuit. *Windon Third Oil and Gas v. F.D.I.C.*, 805 F.2d 342, 347 (10th Cir.1986); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 988 (10th Cir.1992); *Jensen v. Kimble*, 1 F.3d 1073, 1078 (10th Cir. 1993); and *Connett v. Justus Enterprises of Kansas*, 68 F.3d 382, 385 (10th Cir. 1995); and cases cited from other circuits.

The indictment does not allege a fiduciary relationship between the defendants and the insurance companies. "Persuasive authority" is cited demonstrating that insurance agents like these do not have any fiduciary relationship with insurance companies. *Dodd Ins. Services v. Royal Ins. Co. of America*, 935 F.2d 1152, 1157 (10th Cir.1991). Because there was no fiduciary relationship between the defendants and the insurance companies, the non-disclosures or material omissions at issue in the case cannot form the basis for any allegations of fraud and must be stricken from the indictment.

The indictment also alleges that the defendants did not disclose that the prospective policy holder intended to reduce or cancel the policy at the end of the first year of the life of the policy. The companies expected the policies sold by the defendants to continue to be in force after the first year. Because they expected premium payments beyond the first year but did not receive them, the indictment asserts the companies were defrauded.

Defendants contend that even if the defendants had represented that the policy purchasers would continue the policies in the future, even if that representation was wrong, that would not amount to fraud under Wyoming law. *Bushnell v. Elkins*, 34 Wyo. 495, 245 P. 304, 307 (1926), is cited for the proposition that a representation which is promissory in nature and which relates to the future or which depends upon contingencies which may or may not happen cannot furnish the foundation for a claim of fraud or deceit. The defendants claim the same result should obtain under federal law. *Sawyer v. Prickett*, 86 U.S. (19 Wall.) 146, 150, 22 L.Ed. 105 (1873), held that a promissory statement is not ordinarily the subject either of an indictment or of an action. The same rule obtains in the Tenth Circuit. The appellate court in *United States v. Stanolind Crude Oil Purchasing Co.*, 113 F.2d 194, 201 (10th Cir. 1940) held "To constitute actionable fraud, a false representation must relate to a present or preexisting fact and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity. Statements or representations as to contingent events do not constitute fraud, although they turn out to be false." See also *Haque Travel Agency v. Travel Agents International*, 808 F.Supp. 569, 572 (E.D.Mich.1992).

The defendants claim the indictment makes no allegations about what the defendants actually represented to the insurance companies. The insurance companies merely expected that premiums would be paid in the future, even though the policies contained no contractual provision requiring policy owners to make any payments other than the initial one. The defendants contend that "at most, the indictment alleges some possibly sharp practices committed by the defendants, but such practices are not criminal." Not all conduct that strikes a court as sharp dealing or unethical conduct is a scheme or artifice to defraud.

## B. Government's Response and Arguments

The government responds by noting that the defendants are charged with violations of federal criminal statutes and argues that the defendants' reliance upon state law is misplaced. It also disputes that the cases cited stand for the proposition that nondisclosure of material facts cannot be

actionable as criminal fraud in federal court.

The government argues "fraud is a false representation of a matter of fact, whether by words or by conduct, by false and misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury." *United States v. Smith*, 13 F.3d 1421, 1425 (10th Cir.1994). A false or fraudulent representation, within the meaning of 18 U.S.C. § 2314, may be made by statements of half truths or the concealment of material facts as well as by affirmative statements or acts. *United States v. O'Boyle*, 680 F.2d 34, 36 (6th Cir.1982).

The government states that the relationship of the defendants with the three insurance companies did impose upon them a duty to disclose to the companies material information concerning the policies they sold for the companies. Defendant cites to Wyoming law concerning the duties owed by agent to the principal. The Wyoming Supreme Court defines an agency as "a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Austin v. Kaness*, 950 P.2d 561, 564 (Wyo.1997). An agent acts in a fiduciary capacity and owes to the principal the utmost good faith. The principal has the right to assume that the agent will act honestly and with integrity and within the scope of the agency.

The government cites to and relies upon analogous Wyoming law discussing the duties owed by a real estate agent or broker to his principal seller, including *Zwick v. United Farm Agency, Inc.*, 556 P.2d 508 (Wyo.1976); *Myer v. Miller*, 631 P.2d 441, 443 (Wyo.1981); *Hoge v. George*, 27 Wyo. 423, 200 P. 96, 101 (Wyo.1921); *Hagar v. Mobley*, 638 P.2d 127 (Wyo.1981) (recognizing that Wyoming statutes, in addition to general agency law, impose special duties upon realtors, and that they owe a dual obligation-standard of care to both prospective purchasers as well as their principals, the seller).

The government argues that, similar to realtors, insurance agents are regulated by statute, must be licensed by the state to practice their profession, meet certain qualifications of the State Board of Insurance Agent Examiners, meet continuing education requirements, and adhere to a governing disciplinary code.

The government cites to authority from other jurisdictions which has determined that the nature of the relationship between an insurance company and its agent is one of principal and agent based upon the contract between the parties and/or the nature of their relationship, including *Holtzman v. K & T Co.*, 375 A.2d 510, 514 (D.C.App.1977), and other cases. Federal courts should look to state law to determine if an insurance agent owes a fiduciary duty to his insurance company. *Schrader v. Prudential Ins. Co. of Am.*, 280 F.2d 355, 363 (5th Cir.1960); *Carolina Cas. Ins. Co. v. Cummings Agency*, 110 F.3d 1 (1st Cir.1997). Here, all of the defendants entered into contractual relationship with the insurance companies to sell insurance policies. The contracts provide that the agents agreed to sell life insurance policies for the company in return for generous specified commissions and bonuses. The government also notes that Daniel Schwab, in other proceedings, has recognized that he owed a fiduciary duty to the insurance company. The defendants agreed to solicit applications for life insurance policies for these insurance companies. The controlling agreements placed upon them the affirmative duty to inform the three companies of material information surrounding solicitation and sale of the policies.

Regarding the defendants' arguments regarding the expectations of future premium payments, the government contends this is a common law defense to fraud charges with no application to the facts of this case and that it is a defense that courts are increasingly reluctant to recog-

nize. 19 ALR4th 459, *Modern Status of Rule that Crime of False Pretenses Cannot be Predicated upon Present Intention Not to Comply with Promise or Statement as to Future Act*, § 2. If a promise constituting a representation of the maker's present state of intention to perform is made with the intention of not performing, it is a misrepresentation of an existing fact and generally held to be actionable, citing *Meyer v. Ludvik*, 680 P.2d 459, 463 (Wyo. 1984); *Johnson v. Soulis*, 542 P.2d 867, 872 (Wyo.1975).

### Discussion

■ Defendants have been charged with conspiracy, in violation of 18 U.S.C. § 371 and with violations of the first paragraph of 18 U.S.C. § 2314, which provides:

"Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud" [shall be guilty of a felony offense against the United States].

■ Essential elements that must be proven to obtain a conviction under Section 2314 (paragraph one) of the National Stolen Property Act include:

1. that the defendants transported or caused to be transported money, goods, securities, wares, merchandise;

2. in interstate commerce;

3. that the value of the property in question exceeded $5,000; and

4. that the defendants transported or caused to be transported those funds willfully and with knowledge that the property had been obtained by fraud. *United States v. Schwab*, 61 F.Supp.2d 1196, 1202 (D.Wyo.1999); *United States v. Reeder*, 170 F.3d 93, 103 (1st Cir.1999); *United States v. Ross*, 131 F.3d 970, 986 (11th Cir.1997); *United States v. Monus*, 128 F.3d 376, 384 (6th Cir.1997); *United States v. Quintanilla*, 2 F.3d 1469, 1474 (7th Cir.1993); *United States v. Block*, 755 F.2d 770 (11th Cir.1985).

■ Section 2314 prohibits the interstate transportation of goods, services, wares, merchandise, securities or money valued at $5,000 or more by individuals who knew the property to have been stolen, converted, or taken by fraud. *United States v. Wallach*, 935 F.2d 445, 465 (2d Cir.1991). Actual pecuniary harm to the intended victim must be shown. *Id.* at 466. The government must also prove that the defendant knew the property or money was procured by fraud; however, the government does not need to prove the defendant actually participated in a scheme to defraud someone. *Id.*

■ Federal common law governs the meaning of the statutes; the meaning of the federal statute should not be dependent on state law. *United States v. Turley*, 352 U.S. 407, 410–412, 77 S.Ct. 397, 399–400, 1 L.Ed.2d 430 (1957). In the context of § 2314, federal courts have held that " '[t]he words 'stolen, converted, or taken by fraud' have been construed to encompass virtually all ways by which an owner is wrongfully deprived of the use of his property.' " *Perlman v. Zell*, 938 F.Supp. 1327, 1347 (N.D.Ill.1996), quoting *United States v. Gullett*, 713 F.2d 1203, 1210 (6th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1983) ("Under federal common law, the requirement that the funds be alleged to have been 'stolen, converted or taken by fraud' is satisfied by Perlman's allegations that the defendants wrongfully transferred and kept for themselves proceeds from the Class II partnership refinancings and sales that should have been paid to him." *Perlman v. Zell*, 938 F.Supp. at 1348).

Earlier cases have discussed the language of § 2314. The Fifth Circuit, in *United States v. Evans*, 579 F.2d 360 (5th Cir.1978), considered the defendant's challenge to jury instructions, which focused on the definitions of "converted" and "taken by fraud." *United States v. Evans*, 579 F.2d at 361. The appellate court stated:

The trial court told the jury that "converted" meant "to appropriate dishonestly or illegally to one's own use anything of value." "Fraud" was defined as

"an intentional misrepresentation, concealment, or nondisclosure for the purpose of inducing another, in reliance upon it, to part with something of value or surrender a legal right." Evans contends that under section 2314 "converted" means only illegal takings. So, he argues, the trial court erred when it included the notion of a dishonest taking. Furthermore, he contends that the trial court was mistaken when it failed to instruct the jury that to "take by fraud" required that damage be done to the defrauded party. Here, however, since the corporation received value for its checks there could be no taking by fraud.

The last contention is but a restatement of the challenge to the sufficiency of the evidence. We need not decide whether it is necessary that the government prove that the defrauded property party was deprived of property...., for here there was sufficient evidence to show that the corporation paid money without receiving fingerlings. The corporation was therefore damaged.

Assuming, without deciding, that a proper objection was made by Evans to the court's instructions to the jury (Fed. R.Crim.P.30), Evans' challenges to those instructions are without merit. As this court said in *Lyda v. United States*, 279 F.2d 461 (5th Cir.1960), the language of section 2314 "reflects a congressional purpose to reach all ways by which an owner is wrongfully deprived of the use or benefits of the use of his property." ... This court has itself used the term "dishonest" in explaining the scope of the statute.... Finally, the trial court did instruct the jury that it must find that the corporation had been induced to "part with something of value or surrender a legal right." There was no error in instructing the jury.

*United States v. Evans,* 579 F.2d at 361 (citations omitted).

A similar approach was employed by the Sixth Circuit in *United States v. Frakes,* 563 F.2d 803 (6th Cir.1977). The court cited authority holding that the issue of whether goods were obtained by one of the unlawful methods of acquisition referred to in the National Stolen Property Act is not to be decided upon the basis of technical common law definitions. *United States v. Frakes,* 563 F.2d at 805, citing *Bergman v. United States,* 253 F.2d 933, 935 (6th Cir. 1958). That court, in holding that the word "stolen" in the act should be given the same meaning as in the Dyer Act, further stated:

We find support for our conclusion in the fact that the National Stolen Property Act and the Dyer Act are part of an overall legislative scheme designed to thwart the misuse of interstate commerce. As the Fifth Circuit noted in *Lyda,* [279 F.2d 461 (5th Cir.1960)] ...:

The aim of [the National Stolen Property Act] is, of course, to prohibit the use of interstate transportation facilities for goods having certain unlawful qualities. This reflects a congressional purpose to reach all ways by which an owner is wrongfully deprived of the use or benefits of the use of his property. It was one way to meet the difficulties in legislative draftsmanship. The experience with this Act, the Dyer Act, and others bears witness that "what has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches." ... Congress by the use of broad terms was trying to make clear that if a person was deprived of his property by unlawful means amounting to a forcible taking or a taking without his permission, by false pretense, by fraud, swindling, or by a conversion by one rightfully in possession, the subsequent transportation of such goods in interstate commerce was prohibited as a crime.

*United States v. Frakes,* 563 F.2d at 805–806 (most citations omitted). *Lyda v. United States,* 279 F.2d 461 (5th Cir.1960), cited by the *Frakes* court, recognizes the

breadth of the National Stolen Property Act, defining as a crime the interstate transportation of goods, wares, merchandise, securities or money of a stated value knowing such items to have been stolen, converted or taken by fraud.

The Fourth Circuit, in *United States v. Upshaw,* Unpublished Disposition, 873 F.2d 1441 (Table), Text at 1989 WL 37429 (4th Cir.1989), upheld a conviction of a defendant pursuant to 18 U.S.C. § 2314 for transporting in interstate commerce goods, wares, or merchandise of the value of $5,000.00 or more, knowing the same to have been stolen or obtained by fraud. That court stated:

> In general, "fraud comprises all acts, conduct, omissions and concealment involving breach of a legal or equitable duty and resulting in damage to another." *Isaacs v. United States,* 301 F.2d 706, 713 (8th Cir.1962), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58.

> Plaintiff contends that although the Porsche was transported from North Carolina to Florida where it was repossessed, that in as much as [sic] the Porsche was repossessed by the NCNB before the installment of rent became due and payable, the Porsche could not be a stolen vehicle and he could not be convicted under § 2314. That statute not only covers the transportation of properties stolen, but also those "taken by fraud." Defendant acquired the possession and lease of the Porsche by fraudulent misrepresentations of his social security number, his former residence, his financial position, that he had a Wyoming driver's license, and giving a bad check.

> Possession, or title, are no defense where they have been obtained by fraud
> . . .

*United States v. Upshaw,* 873 F.2d 1441, 1989 WL 37429, at *3 (most citations omitted). Cf. *United States v. Coyle,* 943 F.2d 424 (4th Cir.1991) (mail fraud statute; stating "to defraud" commonly refers to "wronging one in his property rights by dishonest methods or schemes" and usually signifies the "deprivation of something of value by trick, deceit, chicane or overreaching," citing *McNally v. United States,* 483 U.S. 350, 358, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987)).

The Sixth Circuit also considered 18 U.S.C. § 2314 in *United States v. Vicars,* 465 F.2d 720 (6th Cir.1972). The defendant had been prosecuted for transporting and causing to be transported an airplane known to have been taken by fraud, pursuant to § 2314. The charges grew out of an agreement between the defendant (Vicars) and TRB to exchange airplanes. The defendant was to transfer title to his Beechcraft airplane ("Whiskey") and was to receive TRB's Beechcraft airplane ("Zebra") plus $18,000 in cash free and clear of all liens. The fraud claimed by the government included the defendant's representations to TRB that the aircraft in question was airworthy when it was not and that the airplane was free and clear of all encumbrances when liens in excess of $30,000 existed. The defendant did not disclose that the FAA had not approved modifications on the Whiskey aircraft so that it was airworthy and did not disclose that a bank held liens on the Whiskey aircraft in the approximate amount of $32,000.00. The defendant concealed from TRB his conversations with the FAA regarding modifications on the aircraft and that work had to be done before it would be approved as airworthy. The circuit court stated:

> Intent is one of the elements of fraud. Because of the difficulty in exploring the mind of a defendant to ascertain his intent, it is necessary to consider the facts and circumstances of the transaction in order to make the determination. It is not necessary to prove intent by direct testimony. The representations made in this case may be considered as "badges of fraud." . . . Other indicia are:

> (1) Failure to disclose the conversations between Vicars, Elliot and the FAA inspector including the filing of a false 377 report with FAA by Elliot at the direction of Vicars.

(2) Transporting the Whiskey airplane from Fort Worth to Detroit in violation of FAA regulations.

(3) Flying the Zebra aircraft to Palacios, Texas where it was hidden instead of flying it to Vicars' hangar in Forth Worth.

(4) Breaking and entering TRB's hangar at the Detroit City Airport in the night season and removing the Whiskey aircraft therefrom without the knowledge or consent of TRB.

(5) Flying the Whiskey aircraft from Detroit to Fort Worth, Texas, without the knowledge or consent of TRB, and in violation of FAA regulations.

(6) Stripping the Zebra aircraft and disposing of the stripped parts leaving only a shell.

When one or more misrepresentations are made, it is not necessary that all of them be proven in order to sustain a conviction for fraud. The conviction can be sustained if any one material misrepresentation made by the defendant was proven to be false and known to be false by him and was relied upon by the victim....

\*\*\*\*

The word "stolen" in the statute is not to be limited to cases involving common law larceny. The congressional purpose of eliminating the interstate traffic in unlawfully-obtained motor vehicles should be considered. *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957).

*United States v. Vicars*, 465 F.2d at 724 (citations omitted). See also *United States v. Autuori*, Unreported Decision, Text at 1998 WL 774232 (D.Conn.1998) (discussing elements of mail/wire fraud violations, noting that "scheme to defraud" "defies precise definition," 1998 WL 774232, at *15, and that "[f]raud is measured by a departure from community standards of 'fair play' and 'candid dealings[;]'" *id.*, and in the context of the mail fraud statute, the Supreme Court has indicated that the phrase refers to "'wronging one in his property rights by dishonest methods or schemes,'" or depriving a person "'of something of value by trick, deceit, chicane or overreaching.'" *Id.* at *16). Consistent with this analysis, the Sixth Circuit has stated that half truths, concealment of material facts, as well as affirmative false or fraudulent representations are sufficient to support a conviction for interstate transportation of money taken by fraud under 18 U.S.C. § 2314. *United States v. O'Boyle*, 680 F.2d 34, 36 (6th Cir.1982).

Black's Law Dictionary (5th Ed.) defines "fraud," in part, as follows:

An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Any kind of artifice employed by one person to deceive another. *Goldstein v. Equitable Life Assur. Soc. of U.S.*, 160 Misc. 364, 289 N.Y.S. 1064, 1067. A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. *Johnson v. McDonald*, 170 Okl. 117, 39 P.2d 150. "Bad faith" and "fraud" are synonymous, and also synonyms of dishonesty, infidelity, faithlessness, perfidy, unfairness, etc.

Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation. *Citizens Standard Life Ins. Co. v. Gilley*, Tex.Civ. App., 521 S.W.2d 354, 356.

It consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him an injury. As distinguished from negligence, it is always positive, intentional. It comprises all acts, omissions, and concealments involving a breach of a legal or equitable duty and resulting in damage to another. And includes anything calculated to deceive, whether it be a single act or combination of circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth, or by look or gesture. Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantage to the one party, or to cause an inconvenience or loss to the other.

See also Actionable fraud; Badges of fraud; Cheat; Civil fraud; Collusion; Constructive fraud; Deceit; False pretenses; False representation; Intrinsic fraud; Mail fraud; Material fact; Misrepresentation; Promissory fraud; Reliance.

As is evident from the previous discussion, fraud, in dictionary definitions and in case law, will include all acts, concealments or omissions calculated to deceive and intended to induce action in another. In the context of this case and the language of § 2314, the allegations that the defendants transported in interstate commerce money of a value in excess of $5,000, knowing it to have been taken by fraud, are sufficient to put the defendants on notice of the accusations the defendants must defend in this case. The existence of a fiduciary duty is not essential to the conclusion, which is reached as a matter of interpretation regarding the scope of § 2314.

However, the Court has considered the defendants' argument that in the absence of a duty to disclose, there can be no violation of § 2314. The defendants have argued that they are not fiduciaries, and because they are not fiduciaries, they did not have a duty to disclose information to the insurance companies in this case. The Supreme Court has discussed the obligation to disclose material information in the context of a case involving an action for violation of Section 10(b) of the Security Exchange Act of 1934 in *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). In that case, the Supreme Court said:

At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." ... [T]he Commission recognized a relationship of trust and confidence between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with that corporation .... this relationship gives rise to a duty to disclose because of the "necessity of preventing a corporate insider from .. tak[ing] unfair advantage of the uninformed minority shareholders." ...

The federal courts have found violations of § 10(b) where corporate insiders used undisclosed information for their own benefit ... The cases also have emphasized, in accordance with the common-law rule, that "[t]he party charged with failing to disclose market information must be under a duty to disclose it." ... Accordingly, a purchaser of stock who has no duty to a prospective seller because he is neither an insider nor a fiduciary has been held to have no obligation to reveal material facts....

This Court followed the same approach in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). A group of

American Indians formed a corporation to manage joint assets derived from tribal holdings. The corporation issued stock to its Indian shareholders and designated a local bank as its transfer agent. Because of the speculative nature of the corporate assets and the difficulty of ascertaining the true value of a share, the corporation requested the bank to stress to its stockholders the importance of retaining the stock.... Two of the bank's assistant managers aided the shareholders in disposing of stock which the managers knew was traded in two separate markets—a primary market of Indians selling to non-Indians through the bank and a resale market consisting entirely of non-Indians. Indian sellers charged that the assistant managers had violated § 10(b) and Rule 10b-5 by failing to inform them of the higher prices prevailing in the resale market. The Court recognized that no duty of disclosure would exist if the bank merely had acted as a transfer agent. But the bank had assumed a duty to act on behalf of the shareholders, and the Indian sellers had relied upon is personnel when they sold their stock ... Because these officers of the bank were charged with a responsibility to the shareholders, they could not act as market makers inducing the Indians to sell their stock without disclosing the existence of the more favorable non-Indian market ...

Thus, administrative and judicial interpretations have established that silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b) despite the absence of statutory language or legislative history specifically addressing the legality of nondisclosure. But such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction. Application of a duty to disclose prior to trading guarantees that corporate insiders who have an obligation to place the shareholders' welfare before their own, will not benefit personally through fraudulent use of material, non-public information.

*Chiarella v. United States*, 100 S.Ct. at 1115–1116 (citations omitted). The Supreme Court further stated:

... First, not every instance of financial unfairness constitutes fraudulent activity under § 10(b).... Second, the element required to make silence fraudulent—a duty to disclose—is absent from this case. No duty could arise from petitioner's relationship with the sellers of the target company's securities, for petitioner had no prior dealings with them. He was not their agent, he was not a fiduciary, he was not a person in whom the sellers had placed their trust and confidence. He was, in fact, a complete stranger who dealt with the sellers only through personal market transactions.

*Chiarella v. United States*, 100 S.Ct. at 1117 (citations omitted).

The Court believes that the defendants' arguments that they owed no fiduciary duty to the insurance companies giving rise to a corresponding duty to disclose are without merit. Wyoming Statutes § 26–1–102(a)(ii) defines the term "agent:"

"Agent", except as otherwise provided in W.S. 26–9–103, means any individual, firm or corporation appointed by an insurer to solicit applications for insurance or annuities or to negotiate insurance or annuities **on its behalf,** and if authorized to do so by the insurer, to carry out and countersign insurance contracts."

Additionally, Wyo.Stat. § 26–9–130, entitled "Reporting and accounting for premiums," provides:

(a) Any premiums or return premiums received by an agent, broke or solicitor are trust funds **received in a fiduciary capacity,** and the agent, broker or solicitor, in the regular course of business, shall account for and pay the funds to the insured, insurer or agent entitled thereto.

(b) The licensee shall establish a separate trust account for premiums specified in subsection (a) of this section and shall not use the account for or commingle it with his own funds. He shall maintain an accurate record and itemization of the funds deposited in the account.

(c) Any agent, broker or solicitor who diverts or appropriates any funds, to which he is not lawfully entitled, to his own use is guilty of embezzlement and upon conviction shall be punished as provided by law.

By statute, the relationship between the insurer and its agent is defined to be a fiduciary relation.

■■■ Under Wyoming law, an "agency is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent." *Austin v. Kaness*, 950 P.2d 561, 564 (Wyo.1997); *Martinez v. Associates Financial Services Company of Colorado, Inc.*, 891 P.2d 785, 789–790 (Wyo.1995) (noting that there are two essential kinds of fiduciary relationships, the first arising from specific legal relationships such as principal and agent, and the second implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and the transaction).

"Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary[.]" ... A fiduciary is defined as: "A person having duty, created by his own undertaking, to act primarily for another's benefit in matters connected with such undertaking." Black's Law Dictionary 625 (6th ed.1990)[.]

*Martinez v. Associates Financial Services Company of Colorado, Inc.*, 891 P.2d at 790 (citations omitted).

■■■ An agent acts in a fiduciary capacity and owes the principal the utmost good faith. The principal does not have an affirmative duty to investigate and discover the acts of the agent, and it is the right of the principal to assume that the agent acts honestly with integrity and within the scope of authority. *Snearly v. Hockett*, 352 P.2d 230, 233–234 (Wyo.1960). See also *Zwick v. United Farm Agency, Inc.*, 556 P.2d 508, (Wyo.1976) (real estate broker is agent of principal, which relationship consists of representation by one for another in contractual negotiations or transactions; duties are same as those owed by any agent to principal, and broker usually acts as fiduciary); *Myer v. Miller*, 631 P.2d 441, (Wyo.1981) (real estate broker or agent must act in good faith toward principal and refrain from obtaining advantage over principal because of the relationship); *Hagar v. Mobley*, 638 P.2d 127, (Wyo.1981) (discussing duties of real estate brokers and agents).

■■■ The principles enunciated in the real estate agent-broker cases are sufficiently analogous to the issues raised in this motion to provide useful analysis and guidance. Based upon that guidance, the Court concludes that even on the basis of existing Wyoming case law, the relationship between an insurance agent and the company on behalf of which the agent acts is that of principal and agent, giving rise to corresponding fiduciary obligations owed by the agent to the company on behalf of which he acts in the sale of insurance. The duty of a subagent to the principal is the same as that of the agent. Restatement 2d Agency § 428(2) (1958); see also *Estergard, Eberhardt & Ackerman, Inc. v. Carragher*, 105 Ill.App.3d 816, 61 Ill.Dec. 588, 434 N.E.2d 1185, 1187 (1982); *P.F.C. Management Corp. v. Athlone Intermediaries, Inc.*, Unreported Decision, Text at 1993 WL 147526 (N.D.Ill.1993); cf. *Gibson v. J.T. Allen Agency*, 407 P.2d 708 (Wyo.1965); *Griffin v. Rosenblum*, 46 Wyo. 40, 23 P.2d 348 (Wyo.1933).

The defendants all stand in a fiduciary relationship to the insurance companies for which they were agents (or sub-agent) selling insurance on behalf of the company. In such a fiduciary relationship, the defen-

dants had a duty to disclose material information to the insurance company· that would be relevant to the insurers' decisions to issue insurance policies to life insurance policy applicants. Further, even if there were no duty to speak, if a party does speak, he must speak the truth and make full and fair disclosure. *Verschoor v. Mountain West Farm Bureau Mutual Insurance Co.,* 907 P.2d 1293, 1300 (Wyo. 1995).

 In Wyoming, the elements of fraud include a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true. *Duffy v. Brown,* 708 P.2d 433, 437 (Wyo. 1985); *Snyder v. Lovercheck,* 992 P.2d 1079, 1084 n. 1 (Wyo.1999); *Marchant v. Cook,* 967 P.2d 551, 554 (Wyo.1998); *Jurkovich v. Tomlinson,* 905 P.2d 409, 411 (Wyo.1995); *Husman v. Triton Coal Co.,* 809 P.2d 796, 799 (Wyo.1991); *Johnson v. Soulis,* 542 P.2d 867, 872–873 (Wyo.1975); *Davis v. Schiess,* 417 P.2d 19, 21 (Wyo. 1966). Active conduct or words which tend to produce an erroneous impression may amount to fraud; half truths may be a lie in effect. *Meeker v. Lanham,* 604 P.2d 556, 558 (Wyo.1979). Further:

> "Even when a party is under no duty to speak regarding a matter, if he does speak, he must speak the truth and make a full and fair disclosure."
>
> " 'A statement of opinion in a business transaction upon facts not disclosed or otherwise known to the recipient may reasonably be interpreted as an implied statement that the maker knows of no fact incompatible with his opinion.' "
>
> " 'If in addition to the party's silence there is any statement, even any word or act on his part, which tends affirmatively to a suppression of the truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observation from the real facts, then the line is overstepped, and the concealment becomes fraudulent.' "

*Meeker v. Lanham,* 604 P.2d at 558–559. See also, for general discussion of fraud, *In the Matter of the Estate of Borton,* 393 P.2d 808, 812 (Wyo.1964) ("Absent actual fraud, was there then constructive fraud as further contended by appellant? Constructive fraud has been defined as consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects.")

 Finally, the Court does not consider persuasive the defendants' argument that the Indictment should be dismissed because some of the omissions related only to future events. A "promise may constitute a representation of the maker's present state of intention to perform, which representation is an assertion of fact—the maker's state of mind. If such promise is made with the intention of not performing, it is a misrepresentation of an existing fact and is generally held to be actionable." *Meyer v. Ludvik,* 680 P.2d 459, 463 (Wyo. 1984); *Johnson v. Soulis,* 542 P.2d 867, 875 (Wyo.1975). Here, the government asserts that the defendants submitted hundreds of life insurance applications to the three insurance companies. Most of the sales were not made by purchasers purchasing a policy, but rather the defendants provided the first year premium payments to them. It is alleged the policy purchasers had no intention, and most generally, no ability to either initially purchase the high benefit policies or continue the policy by making a second year premium payment. Applications submitted to the insurance companies often misstated the applicant's income and did not disclose that premiums were financed or partially assigned. The government asserts that through these practices, the defendants were misrepresenting the quality and nature of the business they were selling.

The Court will deny the defendants' motion to dismiss, and believes that the matter is more appropriately resolved by a jury properly instructed on the law.

The indictment alleges that the defendants fraudulently disclosed material information or failed to disclose information to the insurance company. The indictment is sufficient to put the defendants on notice of the charges and apprises them of what they must be prepared to defend against.

Accordingly, for the foregoing reasons, it is therefore

**ORDERED** that the Motion to Strike Surplusage and to Dismiss Indictment on the Basis of Failure to Plead Essential Element shall be, and is, **DENIED.** It is *further*

**ORDERED** that Vance Schwab's Motions to Dismiss for Lack of Fiduciary Responsibility shall be, and are, **DENIED.**